*Haocheng Qian v. YouTube, LLC*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

<u>**SUMMARY ORDER**</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of February, two thousand twenty-five.

PRESENT:
> AMALYA L. KEARSE,
> PIERRE N. LEVAL,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

_____

HAOCHENG QIAN,

> *Plaintiff-Appellant,*

> v.                                            No. 24-1116

YOUTUBE, LLC, GOOGLE LLC,

> *Defendants-Appellees.*[*]

_____

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

For Plaintiff-Appellant:                    HAOCHENG QIAN, *pro se*, North Windham, CT.

For Defendants-Appellees:              JACOB J. TABER (LaMarte Williams, Jr., *on the brief*), Perkins Coie LLP, New York, NY.

Appeal from a judgment of the United States District Court for the District of Connecticut (Sarala V. Nagala, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the March 29, 2024 judgment of the district court is **AFFIRMED**.

Haocheng Qian, proceeding *pro se*, appeals from the district court's grant of summary judgment in favor of defendants YouTube, LLC ("YouTube") and Google LLC ("Google") on his claim for breach of contract. In his amended complaint, Qian alleged that YouTube violated its terms of service (the "Terms of Service") when, without prior notice or cause, it restricted and removed content that he had uploaded to YouTube. After YouTube and Google moved to dismiss the amended complaint for failure to state a claim, the district court treated the motion as one for summary judgment pursuant to Federal Rule of Civil Procedure 12(d) and concluded that the Terms of Service unambiguously permitted YouTube to restrict and remove Qian's content in the manner that it did. We assume the

2

parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We review a district court's grant of summary judgment *de novo*. *See Banks v. Gen. Motors, LLC*, 81 F.4th 242, 258 (2d Cir. 2023). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). We "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal quotation marks omitted).

The parties agree that the Terms of Service, which incorporated YouTube's Community Guidelines (together with the Terms of Service, the "Agreement"), formed an enforceable contract between Qian and YouTube. The parties also do not dispute that the Agreement governed Qian's use of YouTube, including his operation of "channels" on YouTube's platform where he uploaded and displayed content. Under California law,[1] a plaintiff asserting a claim for breach of contract

---

[1] The Terms of Service contained a choice-of-law clause designating California law as the governing law.

must show "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties," which "is to be inferred, if possible, solely from the written provisions of the contract." *State of California v. Cont'l Ins. Co.*, 55 Cal. 4th 186, 195 (2012) (internal quotation marks omitted). "The clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage, controls judicial interpretation." *Id.* (citation and internal quotation marks omitted).

At the outset, we note that Qian's appellate brief does not raise any specific challenges to the district court's summary-judgment decision. While "we accord filings from *pro se* litigants a high degree of solicitude, even a litigant representing himself [must] set out identifiable arguments in his principal brief." *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 632–33 (2d Cir. 2016) (internal quotation marks omitted). Here, Qian does not identify any errors that the district court committed; he does not, for example, point to any provisions in the Agreement

4

that YouTube purportedly breached, much less explain how the district court erred in interpreting those provisions when it concluded that YouTube had not breached the Agreement. Instead, Qian makes a series of conclusory statements regarding YouTube's conduct that either largely repeat the factual recitation in his amended complaint or attempt to advance new claims for the first time on appeal. By failing to meaningfully assert any arguments in his brief, Qian has forfeited any challenge to the district court's reasoning. *See, e.g.*, *Gerstenbluth v. Credit Suisse Sec. (USA) LLC*, 728 F.3d 139, 142 n.4 (2d Cir. 2013) (concluding that a *pro se* litigant forfeited his argument that the district court erred because he mentioned its ruling only "obliquely and in passing"); *see also Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1078 (2d Cir. 2021) ("It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." (internal quotation marks omitted)).

In any event, we agree with the district court that Qian's claim for breach of contract "fails as a matter of law under the clear and unambiguous terms" of the parties' Agreement. Sp. App'x at 12. As expressly provided in the Terms of Service, YouTube "reserve[d] the right" – "in [its] discretion" – "to remove or take down some or all" of a user's content that was "in breach of th[e] Agreement" or

5

"may cause harm to YouTube, [its] users, or third parties." Suppl. App'x at 141. The Terms of Service then stated that, after removal, YouTube "w[ould] notify [the user] with the reason for [its] action." *Id.* Similarly, the Community Guidelines explained that "[i]f [YouTube's] reviewers determine[d] that content violate[d] [its] Community Guidelines, [YouTube] [would] remove the content and send a notice to the [content] [c]reator." *Id.* at 151. Those Guidelines further provided that YouTube would issue "strike[s] to [a user's] channel" and place "temporary restrictions" on an account that violated its Guidelines, with "three strikes within a [ninety]-day period" resulting in a channel's termination. *Id.* Even then, YouTube reserved the right to "bypass [its] strikes system" and "terminat[e]" channels "dedicated to violating [its] policies or that ha[d] a single case of severe abuse of the platform." *Id.*

In short, the Agreement did not require YouTube to give advance notice or provide a specific cause to Qian before removing his content. Qian acknowledges that after YouTube removed one of his channels, he received an email notice explaining that YouTube took down his content because it was "serious[ly] or repeatedly in violation of [its] Community Guidelines." *Id.* at 213–14. Given the above provisions, YouTube was not obligated to do anything more. Qian also

6

fails to identify any provisions in the Terms of Service or Community Guidelines that granted him the right to alter his violative content to bring it into compliance, or to download content that had been or was going to be removed. For these reasons, we agree with the district court that YouTube's removal of Qian's content did not constitute a breach of the Agreement. *See, e.g., Prager Univ. v. Google LLC,* 301 Cal. Rptr. 3d 836, 850 (Ct. App. 2022) (concluding that YouTube's Terms of Service "expressly reserved the right[] to remove [c]ontent without prior notice" (internal quotation marks omitted)).

Qian further contends on appeal that YouTube violated the terms of its "Partner Program," which allowed users to profit from content posted on the platform. But under the "Right to Monetize" provision in the Terms of Service, Qian "grant[ed] to YouTube the right to monetize [his] Content on the Service" but was "not entitle[d] . . . to any payments" under that Agreement. Suppl. App'x at 140. And Qian did not specify to the district court what provisions of the Partner Program were purportedly breached, much less offer evidence in support of that breach.[2]

---

[2] We likewise see no error in the district court's conclusion, which Qian has not challenged on appeal, that any claim for a breach of the implied covenant of good faith and fair dealing fails as a matter of law. *See Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.,* 2 Cal. 4th 342, 374 (1992)

Finally, in his appellate brief and various submissions to this Court, Qian asserts that YouTube, among other things, "violated [his] intellectual property rights" and restricted his "right to freedom of speech," "thought," and "expression." Qian Br. at 6–7, 10. But Qian brought a single cause of action for breach of contract in his amended complaint, and as noted above, we need not consider new claims or allegations raised for the first time on appeal. *See, e.g.*, *Green*, 16 F.4th at 1078.

\* \* \*

("[I]f defendants were given the right to do what they did by the express provisions of the contract[,] there can be no breach [of the implied covenant]." (internal quotation marks omitted)).

8

We have considered Qian's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court. All pending motions are **DENIED**.[3]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] *See* Doc. No. 15 (Qian's motion for "public rehearing," seeking as relief "[r]escission of summary judgment," a jury trial, "[t]he right to make public representations," and the "[e]limination of fear"); Doc. No. 24 (Qian's motion "on Contract Fraud and Discrimination"); Doc. No. 34 (Qian's "Motion for Summary Judgment Denied and Open Jury Trial," which includes what appears to be a thirty-nine page supplemental brief); Doc. No. 36 (Defendants' motion to strike Doc. No. 34 as an unauthorized supplemental brief and to dismiss the appeal for repeated rule violations); Doc. No. 52 (Qian's "Motion to Commence Jury Trial"); Doc. No. 54 (Qian's motion to strike Defendants' motion to strike and dismiss the appeal).